And we'll hear argument next in HDI Global Insurance v. Kuehne and Nagel, Inc. Case number 25-531. Thank you. Good morning, Your Honor. May it please the Court? The issue before this Court is a simple one. It's how many packages... Mr. Stavridis, hold on one second. Oh, sorry. Mr. Floyd is also on. Your Honors, I'm on as well. Thank you. Okay, go ahead, Mr. Savio. As I was saying, Your Honor, the issue before this Court is a rather simple one. It simply is how many packages were in the shipment for COGSA limitation purposes. And we suggest the answer is just as simple. The front of the Kuehne and Nagel 4C waybills answer that question. In the column entitled Number of Packages, Kuehne and Nagel, not Mollie the consignee or ECI the shipper, entered that data. And when Kuehne and Nagel entered the number of cartons in the Number of Packages column, that should have been the starting point and the ending point under this Court's precedent in Seguros, which we respectfully submit the District Court disregarded. In Seguros Illuminati against M.V. Poppe, this Court held the number appearing under the heading Number of Packages is our starting point and our ending point on this inquiry unless the significance of that number is plainly contradicted by contrary evidence. All right, so is this a case in which the significance of that number is plainly contradicted because the way bill itself says for COGSA purposes, you should understand the packages as the pallets? No, Your Honor. We would submit the standard is, is it plainly contradicted by evidence of the party's mutual intent? And this Court has long held that boilerplate terms on the reverse of the bill of late interstate way. Wait a second. So wait, so your position is if we had evidence that your client had read the terms on the reverse of the way bill, then it would be a mutual understanding, but you're saying because you didn't, it doesn't reflect your mutual understanding and we should go with the other number. No, Your Honor. What we're saying simply is if when you read the entirety of the contract, the front of this C way bills says number of packages and it inserts the number of cartons. When we read the definition of package on the reverse of the C way bill, it defines package as the carton. It's only when you come down 70 line laters to close. Yes. So there arguably is some ambiguity in the contract, but 6.1 C is pretty clear, but the district court found that there was other substantial evidence of the party's intent, the course of conduct, you know, the labeling on some of the other documents. Um, isn't the issue of what the parties intended a factual question and, and, and, and what is the evidence? What, what is the clear error here in the district courts finding the clear error? Your Honor is the district court did not look to the packing list. It relied upon a commercial invoice to determine the party's mutual intent. And to be clear, commercial invoice is, uh, represents the value of the cargo, which the shipper slant, uh, seller constant, he sent buyer use district question. So COGS, uh, I mean, uh, you know, I guess there's a question as to whether COGS is applying directly or it's applying as a matter of contract, but putting that aside, we said, even when it applies directly, uh, we defer to the party's understanding of what a package is, uh, short of, you know, they can't say that the whole shipping container is a package, but short of that, we accept that what they specify by contract. So you're pointing out that the C-way bill says a package is defined one way for some purposes and a different way for COGS purposes. If in fact the C-way bill didn't use the term package twice, but instead said something like the number of cartons, you know, is X, but the term package is going to be defined only as the pallets for all purposes. You would say even under COGSA, then the pallets are the packages, right? You're right. I would say this would be the first court that would hold to the best of our knowledge, that boilerplate terms on the reverse of the bill of lading or C-way bill representative. Okay. So you're saying that even if, even if what is on the C-way bill for COGS purposes were the only definition of package anywhere on the C-way bill, you're saying it still would not count as the definition of package for COGSA purposes? What we're saying, Your Honor, is under Seguros, the number of packages as it appears on the front is the beginning and the end. And then we have to look to whether there's contrary evidence of the party's mutual intent to hold something other than the carton, which is identified on the front of the C-way bill as the package. But Seguros itself departed from what appears on the front of the C-way bill, right? No, Seguros did not depart from what was on the front of the C-way bill. Seguros simply said it's the beginning and the ending, and unless it's plainly contradicted or unless what appears there can't qualify as a package, and the Seguros court said 10 ingots cannot qualify as a package. So we're going to look to other evidence. Right. So it's departing from just what it says on the C-way bill. Correct. However, the holding is, and the court made clear that we agree that the number in the number of packages column reflects the party's understanding as to the number of packages, and we would apply those numbers in determining the aggregate per package limitation if the item to which the numbers referred could fairly be considered a package. The Second Circuit itself said if we're looking at the front of the C-way bill, or excuse me, the bill of lading in Seguros, and the number of packages can be considered a package. I guess, but I guess my question is, if the way bill did not have two different definitions of package, but simply said the number of packages is the number of pallets, then you would say, okay, under our case law, that would be the number of packages for concept purposes, right? No, we wouldn't, Your Honor. We'd be saying that as between, as I understand the question, you're saying if the bill of lading, or this case, the C-way bill did not define a package as a carton, that only 6.1 existed, and the front of the bill of lading didn't exist either on the number of packages, and the only thing that we had was that 6.1c, we would still be arguing that is not representative of the party's mutual intent because you just simply have to refer to the packing list. Oh, really? So then you're not saying that actually the rule is, it's whatever appears on the front of the C-way bill. You're saying it's just unlawful to define package as the pallets. No, we're saying it's not representative of the party's mutual intent, Your Honor, which is what Scuros says. If the only definition of package that appeared in the C-way bill was the pallets, you're saying it still wouldn't be representative of the party's intent, but why would that be? Is it the language of the contract, the most probative evidence of the contract of adhesion, and this court has said that is, as a matter of law, not evidence of the party's mutual intent, and so the next step we suggest or we submit would have been... But you know, I mean, what's interesting about it actually is that the standard language on the back of the C-way bill provides a default rule, right, but you could have declared a value in the ad valorem provision and had a different liability rule, right? Yes, Your Honor, but that's been an argument that's tried time and time again and has been largely discounted by this court. Some substance of that is we could have declared a value, but COGSA provides certain defenses to the carrier, so even if the... Unless we establish the carrier's liability, then the ad valorem, it doesn't really get us anywhere, and what we're suggesting here is the packing list, the document... It doesn't get you anywhere, but you're saying the thing you want to get out of is the liability cap established by the C-way bill had a provision to specify a different liability cap. Correct, which still would not be, in this particular case, representative of the party's mutual intent. That is, in the Second Circuit, the crux of the analysis, and we're suggesting that the district court clearly erred when it looked at a commercial invoice, which has to do with values, and disregarded the packing list, which the shipper used, the consignee used, and Kuhn and Nagel themselves used. Why do you say disregarded? It didn't disregard it. It took it into account and then looked at other evidence. That's exactly what Seguros tells us to do. But what we're suggesting, Your Honor, is the packing list identified the number of cartons as the number of packages. The commercial invoice did not. It was Kuhn and Nagel's burden to demonstrate that there was evidence that clearly contradicted, and what we're simply suggesting is the district court erred in finding that the commercial invoice took precedent over a packing list, which was used to determine the number of packages for the C-way bill. And so that's what we're suggesting the error is. I think we've got your argument. We'll hear from Mr. Floyd for the appellee. Thank you, Your Honors. May it please the court, I'm Edward Floyd from Floyd-Zakovich for the defendant appellee, Kuhn and Nagel, Inc. The district court's opinion and order entered February 10, 2025, was correct and proper in all respects and should be affirmed. That is particularly clear in light of the arguments being advanced by the appellant insurer, the subrogated insurer, HDI. Their argument boils down to the proposition that when construing a contract, a court should not actually look at the entire contract. However, that is contrary to overwhelming amounts of case law as well as basic common sense. Nonetheless, that's precisely what HDI is calling for here. It is not, though, what the district court did. Instead, the district court's post-trial opinion and order, from which the appeal is made, was clearly determined upon the basis that, quote, a word or phrase is ambiguous when it is capable of more than one single meaning, viewed objectively by a reasonably intelligent person, familiar with the terms and customs, etc. The court cited the authority for the proposition that the touchstone of analysis for a contract and interpretation needs to be the actual agreement itself, begin with the document that's at issue. I get that there's this provision that says in the Seaway Bill that, for purposes of COGSA, we're going to have a different definition of package. COGSA says that a shipper can't go below a $500 liability cap per package. That sets a floor. Isn't it a little bit much for the contract between the parties to say, for all purposes, we have one definition of package, but only for the purposes of COGSA we're going to define package as multiples of those packages? Why isn't that just a violation of the provision that says you can't go below a cap of $500 per package? I don't think that that's at all a violation of that proposition, Your Honor. A Seaway Bill, and in this instance, similarly with bills of lading, they are standard form contracts that need to be suited for multiple purposes. So that definition, generic definition of a capital P package in section one of the terms and conditions is the default. That is what Judge Lyman found as well. That's the default that for all other purposes in the contract, one reverts to. For instance, if carriage was being made from an overseas port to another foreign country, a non-U.S. destination port, discharge port. But why does 6.1c override section one in this case? Because it is specific to the issue and the general proposition of law is that the specific should prevail over the general. How is it specific as opposed to the language in section one? In comparison, it says precisely at 6.1c, neither the carrier nor the vessel shall in any event be or become liable in excess of $500 per package. And then for limitation purposes under COGSA, it is agreed that the meaning of the word package shall be anything that's palletized. You're saying it's specific because it specifically applies to COGSA and not for general purposes. And so that's why it's specific, right? Yes, it's specific. I mean, I get that as a matter of contract interpretation. I guess my question is if we have a principle from COGSA that says you're not allowed to go below a liability cap of $500 per package, isn't it just a subversion of that provision for the parties to agree for all purposes, a package is one thing, but then only for COGSA purposes, a package is a much bigger thing? I don't think it would be at all a subversion of COGSA going all the way back to this court's decision in standard electrica. It has been accepted that a pallet can be a COGSA package and the purpose of the judicial inquiry is to determine what the parties understood as being the COGSA package. 6.1c is specific because it makes specific reference to palletized assemblages, right? Isn't that why it's specific? Yes, your honor. Okay, and section one doesn't refer to pallets at all. It may, section one has references to pallets. I can read the precise, but it is not specific to COGSA limitation. The clause in 6.1c is dealing with U.S. carriage. If you look at the subheader 6.1, it's U.S. carriage. Right below that in 6.2, it begins to address non-U.S. carriage. And then further down in 6.3, and this is a point which was made by Judge Lyman below, it addresses use of the ad valorem declaration. And in that situation, 6.3, the capital P package word is actually used. And that's why that becomes the default, but not in the non, excuse me, not in the U.S. carriage in the absence of a higher value declaration. So if the buyer had specified or the, I don't know who, I guess the seller specifies would fill in the ad valorem, right? Correct. Okay, so if they had filled in a higher value in the ad valorem provision, it would have been a value per capital P package, which would have been to value per carton. That is correct. And if they had done that, then I guess you would have said, all right, you're going to, you're trying to raise our liability cap. We might negotiate over fees or something if we're going to take on that liability, but that was a possibility under this contract. That would be standard practice, Your Honor. If a shipper calls for a higher value, declares a higher value, then that shipper is charged a higher freight rate for the cargo. The situation here, if one even needed to get into any parole evidence or material beyond the actual contract, is that the on average value of these cartons was less than the $500 limitation. Therefore, that undermines the proposition. Sorry, the value of the cartons was less than the $500 limitation, even $500 per pallet? No, the value of the cartons, there were 480 cartons. The total amount of HDI's claim is for about $120,000. Therefore, the value on average per carton would be about $240 some dollars per carton. Right, but how many cartons are in a pallet? I don't recall the exact number here. I think it was $240 per carton. If that were the declared value, that would be more than $500 per pallet, which was the default rule. Correct. For the pallet valuation, for the pallet as the basis for the package limit, the cargo value would be above the limit. But if the cartons were the basis for the limitation package, then the value is below the limit, which would undermine the situation here where there is an insurer standing as the suffragated insurer bringing the claim. Why would that matter? If in fact the value is less than the cap, it just means that you're not going to reach the cap. It doesn't mean that you couldn't have a cap of $500 per carton, right? No, it means that there's no economic purpose in purchasing cargo insurance. Well, unless you want to have coverage of $240 per carton as opposed to $500 per pallet, right? I mean, I agree they didn't do that here, but it wouldn't have been irrational. Your Honor, I respectfully think that it would be rather irrational for an economic actor to decide to purchase additional insurance if they genuinely believed that the value of their product calculated on the package basis, which they contend applied, is below the limitation level. There's no need for insurance in that situation. Oh, I see what you're saying. The insurance would cover it. Yes, Your Honor. Is this a case in which COGSA applies directly or by virtue of contract? It applies by virtue of contract, Your Honor. I know that HDI cited to a decision out of the Northern District of Georgia and one from the Eastern District of Pennsylvania, which INDICTA said that COGSA applies to way bills and actual bills of lading alike. Both of those decisions, though, cited to a maritime treaty. I guess there's two questions about that. One is whether COGSA applies to the loading or only after the loading is accomplished. Then the question is whether COGSA applies when there's a seaway bill as opposed to a bill of lading. On the first question, does it apply to the loading or since the statute says after the loading on, is it only once the goods are on the ship that COGSA applies of its own force? COGSA, Your Honor, applies by its own force, tackle to tackle, meaning once the crane or other device carrying the cargo has crossed over the rail of the ship. Right. And here, isn't it that the goods fall before they're on the ship? We don't know the exact time as to whether the crane had the container across the rail or not yet across the rail. However, my common sense would say that since the container went into the water, it was before it had crossed. So that's interesting. So you're saying if in fact it went into the water before it crossed the threshold of the ship, COGSA would not apply. But if it had crossed the threshold of the ship and then fell off, it would apply. Your Honor, I think that that would be correct. Okay. You're saying we don't know for sure which it is, right? That was not developed in the evidence, Your Honor. And then the question about the seaway bill, your position is because the COGSA says a bill of lading or other document of title and a seaway bill is not a document of title. It's also the case that it wouldn't apply. That is correct, Your Honor. Of its own force, at least. And the same thing for the pre-tackle and post-tackle periods of time, pre-load and post-discharge, both can be extended by contract that's been well-established and accepted by ports for decades. So contractual extension... But does a lot turn on whether it applies of its own force or by contract? Because even when it the parties to define what a package is, they don't define the whole container as the package. Your Honor, I agree with that point. I think that the case gets the same outcome, whether COGSA applies exproprio of the boray or by contractual adoption of the parties, same outcome under, going back to Penel, the United States lines from 1959, Second Circuit, parties can define the package. And that's what's happened in this situation. I think that that's really a non-issue in this case, but our position is that it applies... Okay, but doesn't it make it a little bit unique that we have a way bill that says we're going to define package one way for most of the interactions between the parties, but we're going to have a special definition only for COGSA? I don't think it's at all unique, Your Honor. The document needs to function in a commercial world where people use certain terminology and the front of the bill of lading, middle box, which are the particulars furnished by shipper and our client, the appellee here is required to recount those particulars as furnished by the shipper. They can't be changed. That box functions primarily as a receipt. That's why when one goes right below the particulars furnished by shipper box and down to the declaration of cargo value, if utilized, immediately below that, it says received by carrier from the shipper. That middle box is a receipt. That's in keeping with the general proposition, well known, that a pure bill of lading serves three purposes. It's a receipt, it's a contract of carriage, and it's a document of title. A C-way bill does the first two, it's not the third. The middle part of the front of the bill of lading or C-way bill in this situation is a receipt. All right, thank you. Thank you very much. Mr. Saville, you've reserved some time for rebuttal. Yes, Ron, there's several issues that have arisen in the course of Mr. Floyd's argument, and I do appreciate Judge Benashi's apparent confusion, and I'd equate that to imagine being a shipper who is just getting a C-way bill. I don't know that I would imagine putting the shipper in a similar circumstance, and that's why this court has said it's not incumbent upon the shipper to parse through the reverse of the terms and conditions to determine what is going on in terms of the packages. In addition, it's HDI's position, it is not HDI's position, that you don't have to look at the entire contract. It's not HDI's position that to general override the specific. What is clear is you have to look at the entire contract. The entire contract says number of packages, and when you look at the entire contract, right, because not your honor, but they're also part of the contract. Correct, but what we're doing now is we're not reading the contract as a whole. The specific is the front of the C-way bill, not the the definitions on the back. Why is that specific? So the front definition, let me just finish. I'm sorry, your honor. The front gives me a definition of package that is a general definition for all purposes unless otherwise specified, and then 61C, or whatever it is, has a specific definition for COGSA purposes. That is a carve out from the general definition, so that is the more specific provision. Your honor, what we're simply suggesting is when we look at the front of the C-way bill, it has a number of packages, and typed in by Coon & Noggle in that column was 120 packages, and they put total 120 packages. That's the specific. When you go to the reverse, we're suggesting that's the general, and in fact, Coon & Noggle could have simply said in the definition of package, except as otherwise provided in clause 6.1C, they didn't say that. We have to infer that that's the case. The shipper receives the cargo in pallets, right? It's like the shipper got cartons and decided to put them all into pallets. The, in this particular case, the original shipment, your honor, came from Morocco, where it was cartons, then put on pallets, and then shipped to Zaragoza, Spain. Depending on the circumstance here, the number of pieces ordered by Mali corresponded to a specific number of cartons, and I believe the testimony showed that, yeah, most of the time it's- 6.1C, doesn't it? Oh, sorry, 6.3. Or I don't know, what's, where's the- 6.1C, your honor, is what the operative- 6.1C. Okay, so 6.1C says, neither the carrier nor the vessel in any event shall become liable in an amount exceeding $500 per package. For limitation purposes under Cogstance agreed, the meaning of the word package shall be any palletized and or unitized assemblage of cartons, which has been palletized and or unitized for the convenience of the merchant, regardless of whether said pallet or unit is disclosed on the front. So, it's saying, the shipper is saying, like, we didn't put it in a, we didn't put it in a pallet, so if we receive a bunch of pallets, we're going to be liable for each one of those, right? I think, your honor, it's the carrier that is saying that we- Sorry, the carrier. Yes, we didn't palletize it. Yes, right. Correct, your honor. The carrier did not palletize it. Correct, that's correct. The carrier received it in pallets. And the carrier in this particular ship, it was an LCL shipment, which means that the carrier actually- Doesn't it just make logical sense, you know, that maybe you'd specify on the receipt how many cartons there were that the buyer should expect, but from the carrier's perspective, it receives a certain bunch, number of pallets, and those are, from its perspective, those are the containers or the packages that it's transporting. But we'd have to disregard the front of the Seaway bill that says 120 packages, and we'd have to disregard the definition of package that appears in Clause 1, and then we'd have to read throughout and say, oh, wait a minute. If CAGSA applies, well, does- I'm a shipper in Spain. Does CAGSA applies? I don't even know what CAGSA is. The definition of package says it's the cartons. And so this is the reason why these default rules apply in contracts of adhesion. CUNA-NAGLE could very simply not put 120 packages in a number of package column. They could have not had a number of packages. Actually, I asked you, hypothetically, if they didn't do that, if the only definition of package was the one that we got that referred to the pallets, you said it would still be the case that that shouldn't count. Because we'd have to look at the party's mutual intent. And this court has said that boilerplate is not mutual intent. And as we alluded to in our prior argument- Why is boilerplate not- Why is this boilerplate? Why is this boilerplate, first of all? It's a C-way bill, Your Honor. This isn't negotiated, as Mr. Floyd pointed out. This is standard terms and conditions that CUNA-NAGLE uses for their shipments. We, ECI, we, Mali, we, HDI, nobody gets to negotiate these. This is what's given to you. Why is that not- Even though you describe it as a contract of adhesion and so on, a boilerplate, we've got a finding. We had a finding from a district court, which is Lyman, that characterized this as evidence of the party's intent that contradicts what you're relying on. And I think your argument must be that that is a clearly erroneous finding. Without basis in the record. Is that correct? Correct, Your Honor. It's twofold. What we're saying in the first instance is that was improper as a matter of law, because there wasn't- He did not properly apply Seguros. And secondly, yes, he was clearly erroneous. The district court was clearly erroneous in disregarding the packing list, which is used by everybody, the carrier, the shipper, and the consignee. The carrier uses the packing list to determine the number of packages. The district court, we suggest, erred in not relying upon that document, instead choosing the commercial invoice. And suggesting that since the commercial invoice didn't list the number of packages, that therefore that governs. And we're simply suggesting that that was erroneous, because the packing list is what everybody relied upon to prepare the Seaway Bill. I think, unless there are any further questions from my colleagues, we have your arguments well in mind. And thank you very much. We'll reserve decision in this matter. That also concludes today's-